IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAEM WALLER | : | CIVIL ACTION |
| v. | : | |
| DAVID VARANO, et al. | : | NO. 10-2029 |

## REPORT AND RECOMMENDATION

L. FELIPE RESTREPO  NOVEMBER 19, 2012
UNITED STATES MAGISTRATE JUDGE

Before the Court is a Petition for Writ of Habeas Corpus filed by Naem Waller pursuant to 28 U.S.C. § 2254. Waller is incarcerated at the State Correctional Institution in Coal Township, Pennsylvania. For the reasons which follow, the habeas petition should be denied.

1. BACKGROUND AND PROCEDURAL HISTORY

In affirming the judgment of conviction in this case, the Superior Court of Pennsylvania sets forth the relevant facts:

> On April 12, 2002, at approximately 11:00 p.m., Brian Birkelback (hereinafter "Brian"), his girlfriend, Cassandra Ketterer (hereinafter "Cassandra"), and his brother, Michael Birkelback ("Michael"), went to the corner of Rising Sun and Gilham to pick up a few friends before heading to a bar. (N.T. 12/9/04, [at] 140-143.) Katilynne McElfoy (hereinafter "Katilynne"), Brian's cousin, John Fearnley (hereinafter "Fearnley"), John Scarpello (hereinafter "Scarpello"), Scott Fitzpatrick (hereinafter "Scott"), Richard Kosteiny (hereinafter "Richard"), Michelle Sayers (hereinafter "Michelle"), and Tammy Jauss (hereinafter "Tammy") were sitting on the steps of the Classic Optical store located at the corner of Rising Sun and Gilham. (N.T. 12/8/04, [at] 26-28.)
> After Brian arrived, Katilynne's attention was drawn to a gold car moving slowly up Rising Sun Avenue; it appeared that the people

in the car were looking at them. Suspecting trouble, Katilynne and Michelle went into the house, and everyone [else] got into Brian's car. (N.T. 12/8/04, [at] 44-53.) Brian was the driver, Cassandra was next to him and Richard sat in the front next to the door. In the rear, Michael was behind Brian, Scarpello was next to him, Fearnley was next to him, and Tammy sat on Scott's lap behind Richard. (N.T. 12/8/04, [at] 115-117; N.T. 12/13/04, [at] 93.)

      At approximately 11:45 p.m., before the [victims'] car pulled off, [one of the victims who was sitting in the front of the car] saw the defendants approach the passenger side of the car; [petitioner] stood at the front passenger window. [Another one of the victims, who was sitting in the back seat,] was suspicious of [petitioner] because he approached the car with money in his hands and asked if anyone wanted to buy weed. Everyone in the car stated that they were not interested in buying weed. (N.T. 12/7/04, [at] 173-74; N.T. 12/8/04, [at] 117-24; N.T. 12/13/04, [at] 95-96.) At that point [another victim in the back seat] yelled, "Oh, man, we're getting robbed." [The victim on the passenger side of the front seat] noticed a gun in [petitioner's] hand and screamed, "That's a fake." He noticed that [co-defendant, Devin Rouse] . . . , who was also on the passenger side, had a silver 9mm gun in his hand. (N.T. 12/8/04, [at] 117-24; N.T. 12/9/04, [at] 15-16.) [One of the passengers in the back seat] noticed a third male on the driver's side. [The driver] exited the car and began fighting the male on the driver's side of the car. Devin [Rouse] fired three shots, one struck [the driver] in the back. (N.T. 12/9/04, [at] 18-19, 149-51.) Everyone got out of the car and [one of the passengers] grabbed [the driver who had been shot] and helped him to the ground. (Id. at 19.) Immediately after the shots were fired, Devin [Rouse], [petitioner], and the third male ran off. ([N.T.] 12/8/04, [at] 126-28.)

. . . .

      Brian was pronounced dead at 12:19 a.m. at Temple Hospital. (N.T. 12/7/04, [at] 155.) Doctor Gregory McDonald, the medical examiner, testified that Brian died from a gunshot wound that entered the lower potion of the back, severing the spinal cord. The bullet proceeded through the aorta, then proceeded through several portions of his intestines and exited out the front part of the abdominal wall. (N.T. 12/13/04, [at] 151-152.)

See Commonwealth v. Waller, Crim. A. No. 686 EDA 2005, Mem. Op. at 1-2, 4 (Pa. Super. filed Apr. 12, 2006). "[Petitioner] and his co-defendant, Devin Rouse, were jointly tried in November

2

of 2003, and again in March-April of 2004, on charges that arose from the fatal shooting of Brian Birkelback by Devin Rouse during [the] robbery on the night of April 12, 2002." See Commonwealth v. Waller, Crim. A. No. 1333 EDA 2008, Mem. Op. at 2 (Pa. Super. filed July 29, 2009). Both trials resulted in hung juries. Id.

On December 7, 2004, a third jury trial commenced, and the jury found petitioner and his co-defendant guilty of murder of the second degree, robbery, carrying firearms without a license, and possessing instruments of crime. Id. Petitioner was sentenced on February 11, 2005 to life without parole for the murder conviction, with concurrent sentences on his convictions for carrying a firearm without a license and possessing an instrument of crime. Id. On petitioner's direct appeal, the Superior Court of Pennsylvania affirmed the judgment of sentence on April 12, 2006, and on October 12, 2006, Pennsylvania's Supreme Court denied allowance of appeal. Id.; Commonwealth v. Waller, 902 A.2d 984 (Pa. Super. Apr. 12, 2006) (table), allocatur denied, 909 A.2d 305 (Pa. Oct. 12, 2006) (table).

On September 12, 2007, Waller filed a counseled amended petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-46. See Pa. Super. Ct. Op. filed 7/29/09, at 3. "On March 18, 2008, the trial court issued a notice of intent to dismiss the PCRA petition pursuant to Pa. R. Crim. P. 907, a notice to which [petitioner] did not respond." Id. The trial court dismissed the PCRA petition on April 17, 2008, id. at 9, and petitioner filed a timely appeal. On July 29, 2009, the Superior Court affirmed the dismissal of the PCRA petition, and the Supreme Court of Pennsylvania denied allowance of appeal on April 7, 2010. See Commonwealth v. Waller, 981 A.2d 938 (Pa. Super. July 29, 2009) (table), allocatur denied, 992 A.2d 889 (Pa. Apr. 7, 2010) (table).

3

Waller subsequently filed this § 2254 petition. His petition alleges that trial counsel rendered ineffective assistance in failing to further object at trial to the already-redacted statement of Devin Rouse as testified to by witness Tyron Rouse, as a violation of his confrontation rights under Bruton v. United States, 391 U.S. 123 (1968). See Hab. Pet. ¶ 12. In response to the habeas petition, the District Attorney of Philadelphia ("respondent") argues that the state courts reasonably found that counsel's assistance was not ineffective, that Bruton does not even apply in this case, and that even assuming arguendo that trial counsel did render ineffective assistance, petitioner was not prejudiced, in any event. See Resp. to Hab. Pet. 11-24. Therefore, respondent urges the Court to deny the habeas petition. Id. at 25. Oral argument was held on February 22, 2012, and the parties have submitted additional briefs.

**2. EXHAUSTION OF STATE REMEDIES**

"It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)), cert. denied, 532 U.S. 919 (2001); Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993). Specifically, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); see Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001), cert. denied, 535 U.S. 957 (2002).

The petitioner has the burden of proving all facts entitling him to a discharge from custody as well as demonstrating that he has met all procedural requisites entitling him to relief.

Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982). Thus, "[t]he burden is on the habeas petitioner to prove exhaustion." DeFoy v. McCullough, 393 F.3d 439, 442 (3d Cir. 2005); see Toulson, 987 F.2d at 987 ("The habeas petitioner bears the burden of proving that he has exhausted available state remedies.").

In this case, petitioner presented his ineffective assistance claim to the Pennsylvania courts during the PCRA proceedings and related appeal, and the Superior Court addressed his claim on appeal and found "no Bruton violation." See Pa. Super. Ct. Op. 7/29/09, at 7. Furthermore, Pennsylvania's Supreme Court denied allowance of appeal on April, 7, 2010. See Commonwealth v. Waller, 992 A.2d 889 (Pa. Apr. 7, 2010) (table). Therefore, since it appears that petitioner's habeas claim was properly exhausted in the Pennsylvania courts, this Court may review its merits under the applicable legal standard. See O'Sullivan, 526 U.S. at 844-45.

3. **STANDARD OF REVIEW**

Title 28 U.S.C. § 2254(d) precludes federal habeas relief to "a person in custody pursuant to the judgment of a State court" based on "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim"

> (1) resulted in a decision that was **contrary to**, or involved an **unreasonable application** of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphases added); see Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S. Ct. 269 (2001). In Williams v. Taylor, the Supreme Court interpreted the standard

5

under § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[1] or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13 (footnote added). The Supreme Court has since cautioned that the "standard of 'contrary to, or involv[ing] an unreasonable application of, clearly established Federal law' is 'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." Greene v. Fisher, 132 S. Ct. 38, 43 (2011) (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)) (internal quotation marks, citation omitted).

The Court of Appeals for the Third Circuit observed in Matteo v. Superintendent, SCI Albion, 171 F.3d 877 (3d Cir.) (en banc), cert. denied, 528 U.S. 824 (1999),[2] that to prove entitlement to habeas relief under the "contrary to" provision of § 2254(d)(1), "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court

---

1. Thus, "[a] state-court decision is contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases." Brown v. Payton, 125 S. Ct. 1432, 1438 (2005) (citing Williams, 529 U.S. at 405); see Early v. Packer, 123 S. Ct. 362, 365 (2002).

2. Prior to the Supreme Court's decision in Williams v. Taylor, the Court of Appeals for the Third Circuit construed the standard of review under § 2254(d)(1) in Matteo. The Third Circuit has since stated that its opinion in Matteo is in accord with the Supreme Court's decision in Williams. See Werts, 228 F.3d at 197.

6

precedent **requires the contrary outcome**." Matteo, 171 F.3d at 888 (emphasis added); see Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001). "This standard precludes granting habeas relief solely on the basis of simple disagreement with a reasonable state court interpretation of the applicable precedent." Id. at 197 (quoting Matteo, 171 F.3d at 888).

When making the "unreasonable application" inquiry, the federal habeas court should ask "whether the state court's application of clearly established federal law was **objectively unreasonable**." Williams, 529 U.S. at 409 (emphasis added); see Chadwick v. Janecka, 312 F.3d 597, 607 (3d Cir. 2002) (citing Williams, 529 U.S. at 409, and Matteo, 171 F.3d at 891). In applying this provision, "[t]he federal habeas court should not grant the petition unless the state court decision, evaluated objectively and on the merits, resulted in **an outcome that cannot reasonably be justified under existing Supreme Court precedent.**" Matteo, 171 F.3d at 891 (emphasis added); see Chadwick, 312 F.3d at 607 (citing Matteo, 171 F.3d at 891); Werts, 228 F.3d at 197.

The Supreme Court stressed that an application of federal law **may be incorrect but still not unreasonable.** Williams, 529 U.S. at 411; see Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196. Thus, mere disagreement with a state court's conclusion is insufficient to justify relief. Williams, 529 U.S. at 411; Matteo, 171 F.3d at 891. In determining whether the state court's application of Supreme Court precedent is objectively reasonable, habeas courts may consider the decisions of federal courts of appeals and district courts. Id. at 890; Ross v. Vaughn, 2001 WL 818359, at *4 (E.D. Pa. Jan. 16, 2001) (citing Matteo).

A state court's decision that is "contrary to" clearly established federal law, as determined

7

by the Supreme Court, see § 2254(d)(1), "does not, by itself, warrant the granting of habeas relief." See Real v. Shannon, 600 F.3d 302, 308 (3d Cir. 2010). "Rather, where a state prisoner 'surmount[s] 2254(d)'s bar to habeas relief' by showing that the state court's decision is 'contrary to' federal law, the federal courts must review the prisoner's claim de novo under the correct federal standard." Id. (citing Wiggins v. Smith, 539 U.S. 510, 542 (2003)). Indeed, AEDPA erects "a substantially higher threshold for obtaining relief than de novo review." Williams v. Beard, 637 F.3d 195, 204 (3d Cir. 2011) (citing Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)) (internal quotations omitted); see also Renico, 130 S. Ct. at 1862 (citing Schriro v. Landrigan, 550 U.S. 465, 473 (2007)); Berghuis v. Thompkins, 130 S. Ct. 2250, 2264 (2010) (citing Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009)) (since state court decision denying habeas claim was correct under de novo review, it was necessarily reasonable under the more deferential AEDPA standard of review). In Waller's case, even assuming that the Pennsylvania court's decision was contrary to clearly established federal law, habeas relief is unavailable since petitioner's claims are without merit under even the lower-threshold de novo standard.

With regard to findings of fact, § 2254(e)(1) provides that a state court's determination of a factual issue[3] is "**presumed to be correct**" and further provides that a habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1) (emphasis added); see Chadwick, 312 F.3d at 607; Duncan, 256 F.3d at 196; Werts, 228 F.3d at 196. "This presumption applies to the factual determinations of both state trial and appellate courts." Duncan, 256 F.3d at 196; see Stevens v. Delaware Correctional

---

3. Factual issues are "basic, primary or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators.'" Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting Townsend v. Sain, 372 U.S. 293 (1963)).

8

Ctr., 295 F.3d 361, 368 (3d Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)).  Furthermore, under Supreme Court and Third Circuit precedent, the presumption of correctness under the habeas statute applies to implicit factual findings as well as the express findings of the state courts.  See Campbell v. Vaughn, 209 F.3d 280, 285-86, 290 (3d Cir. 2000), cert. denied, 531 U.S. 1084 (2001).  Even where the district court applies the applicable federal standard de novo, § 2254(e)(1) mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence.  See § 2254(e)(1); see, e.g., Simmons v. Beard, 581 F.3d 158, 165 (3d Cir. 2009) (citing Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2009)); Nicoloudakis v. Abraham, 296 Fed. Appx. 280, 284 (3d Cir. 2008) (citing Appel).

### 4. PETITIONER'S INEFFECTIVE ASSISTANCE CLAIM

#### (A) Legal Standard for Ineffective Assistance Claims

Petitioner alleges ineffective assistance of counsel in failing to object to the redacted statement under Bruton.  See Hab. Pet. ¶ 12.  The merits of ineffective assistance claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984).  See Williams, 529 U.S. at 390.  In Strickland, the Supreme Court set forth the now-familiar standard for reviewing such claims:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.

Strickland, 466 U.S. at 687; see Williams, 529 U.S. at 390.[4]

To establish that counsel's assistance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Judicial scrutiny of an attorney's performance in applying the deficiency prong of the Strickland test is not exacting. Id.; see also Affinito v. Hendricks, 366 F.3d 252, 258 (3d Cir. 2004), cert. denied, 543 U.S. 1057 (2005). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690. In this regard, Strickland observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689.

In meeting the prejudice prong of an ineffective assistance claim: "Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see Williams, 529 U.S. at 391.

Although Strickland discussed a two-prong test in evaluating claims of ineffective

---

4. An inquiry into effective assistance of counsel is a mixed question of law and fact. Berryman, 100 F.3d at 1094. Therefore, an ineffective assistance claim "require[s] the application of a legal standard to the historical-fact determinations." Id. (quoting Townsend, 372 U.S. at 310 n.6).

10

assistance, it is unnecessary for a court to address both components of the inquiry if the petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 694. Therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id.

In addressing petitioner's ineffective assistance claims in this case, the Superior Court of Pennsylvania applied the legal standard under Pennsylvania law. See Pa. Super. Ct. Op. filed 7/29/09, at 4 (citing Commonwealth v. Steele, 961 A.2d 786, 796-97 (Pa. 2008)). The Third Circuit has "ruled that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland." See Jacobs v. Horn, 395 F.3d 92, n.9 (3d Cir. 2005) (citing Werts, 228 F.3d at 204), cert. denied, 126 S. Ct. 479 (2005); see also Werts, 228 F.3d at 204 (finding that application of Pennsylvania's standard governing ineffective assistance claims was not contrary to established Supreme Court precedent); Brand v. Gillis, 210 F. Supp.2d 677, 684 (E.D. Pa. 2002) (citing Werts) (Pennsylvania standard governing ineffective assistance claims "has been found to be materially identical" to the Strickland test), aff'd, 82 Fed. Appx. 278 (3d Cir. 2003). Thus, the Pennsylvania courts "identifie[d] the correct governing legal principle" in this case with regard to the ineffective assistance of counsel standard, see Williams, 529 U.S. at 412-13. In any event, as explained, since petitioner's habeas claim does not warrant relief in applying federal law de novo, the Court need not specifically apply the more deferential standard provided in § 2254(d)(1).

### (B) Underlying Confrontation Clause Claim

Petitioner claims that counsel rendered ineffective assistance in failing to object, on the

basis of Bruton, to the redacted statement of Devin Rouse as testified to by witness, Tyron Rouse.[5] See Hab. Pet. ¶ 12. In Bruton, the Supreme Court held that a defendant's right under the Confrontation Clause of the Sixth Amendment was violated where a non-testifying co-defendant's hearsay confession inculpating the defendant as a participant in the crime was admitted into evidence.[6] Bruton, 391 U.S. at 126; see United States v. Sandini, 888 F.2d 300, 310 (3d Cir. 1989), cert. denied, 494 U.S. 1089 (1990). Thus, petitioner maintains that his right to confrontation was violated by his trial counsel's failure to further object to Tyron Rouse's testimony about a statement that petitioner's co-defendant made to Tyron implicating petitioner in the robbery.

The Superior Court of Pennsylvania set forth, in its July 29, 2009 Opinion, the relevant facts regarding the testimony challenged by Waller:

> On May 13, 2002, Tyron Rouse gave a statement to police that, on the day following the murder, his cousin, Devin Rouse, confessed to him that he had shot Brian Birkelback in the back when he went out with two other males to commit a robbery. At trial, Tyron Rouse was specifically instructed not to mention that Devin Rouse had directly implicated [petitioner] by name as one of the

---

5. Petitioner's sole grounds for relief raised in his habeas petition are related to petitioner's claim challenging the admission of the redacted statement of Devin Rouse as a violation of his rights under the Confrontation Clause, see Hab. Pet. ¶ 12, and petitioner's Reply to the District Attorney's Response to the habeas petition confirms that his habeas petition "presents a single Bruton claim." See Petr.'s Reply (Doc. 18) at 1. To the extent that any subsequent filing by petitioner may be construed as alleging a different claim or a challenge to the statement of Devin Rouse on different grounds, such a claim would appear, among other things, to be barred by the relevant statute of limitations. See 28 U.S.C. § 2244(d)(1) (imposing a 1-year period of limitation on applications for writs of habeas corpus by persons in state custody).

6. The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI; see United States v. Berrios, 676 F.3d 118, 125 (3d Cir. 2012).

12

participants,[7] and in Tyron Rouse's testimony regarding Devin Rouse's statement to him, references to the other participants were replaced with the words "two other people" and "they."[8]

See Pa. Super. Ct. Op. 7/29/09, at 5 (footnotes in original). In addition, "the trial court, at the conclusion of Tyron Rouse's testimony, gave a limiting instruction, which was reiterated during the trial court's final charge to the jury."[9] Id. at 7. The Superior Court concluded that there was "no Bruton violation," and therefore that petitioner's "claims of ineffectiveness that are founded upon a putative Bruton violation fail." Id. at 7.

"[A] witness's statement implicates the Confrontation Clause only if it is testimonial." United States v. Shavers, 693 F.3d 363, 395 (3d Cir. 2012) (citing Berrios, 676 F.3d at 126); see Crawford v. Washington, 541 U.S. 36 (2004); Davis v. Washington, 547 U.S. 813 (2006). "[B]ecause Bruton is no more than a by-product of the Confrontation Clause, the [Supreme] Court's holdings in Davis and Crawford likewise limit Bruton to testimonial statements."

---

7. See N.T., Dec[.] 9, 2004, [at] 215-217.

8. Tyron Rouse testified that Devin Rouse told him that "[t]wo other people were with him, and that "they" went out "[t]o rob someone." N.T., Dec[.] 13, 2004, [at] 39.

9. After the testimony of Tyron Rouse, the trial court gave the following limiting instruction:

> Ladies and gentlemen of the jury, the statement which is alleged to have been made by Devin Rouse to Tyron Rouse may only be considered by you as evidence against Devin Rouse. Any statement alleged to be made by Devin Rouse to Tyron Rouse may not be considered for any purpose as evidence against Naem Waller. Therefore, you are instructed that any statement which you find to have been made by Devin Rouse to Tyron Rouse may be considered only as evidence against Devin Rouse only.

See Pa. Super. Ct. Op. 7/29/09, at 7 n.7 (quoting N.T. 12/13/04, at 91). A similar instruction was given after closing arguments. Id. (citing N.T. 12/16/04, at 207).

Shavers, 693 F.3d at 395 (citing Berrios, 676 F.3d at 128).

In Berrios, our Court of Appeals considered a conversation between Renaldo Berrios and one of his co-defendants, Tray Moore, that was recorded as part of an unrelated investigation. Berrios, 676 F.3d at 124; see Shavers, 693 F.3d at 395. The conversation incriminated Berrios, Moore, and a third co-defendant, who challenged admission of the recorded conversation on Confrontation Clause grounds. Berrios, 676 F.3d at 125; see Shavers, 693 F.3d at 395. The Berrios Court held that the recorded statements did not bear "the characteristics exhibited by testimonial statements" because there was no evidence that Berrios and Moore intended to incriminate their co-defendants, that they were aware that their conversation was being recorded, or that "their conversation consisted of anything but 'casual remark[s] to an acquaintance.'" Berrios, 676 F.3d at 128 (quoting Crawford, 541 U.S. at 51); see Shavers, 693 F.3d at 395.

Similarly, in Shavers, Andrew White claimed that the trial court violated his right to confrontation by admitting a witness's testimony about a statement that one of White's co-defendants made to the witness that implicated White and another co-defendant in the robbery. See Shavers, 693 F.3d at 395. The Court found that there was no indication that the co-defendant who incriminated White intended to do so or anticipated that the witness would be called to testify against him. Id. at 396. Indeed, there was no suggestion that the conversation amounted to more than a "casual remark to an acquaintance." Id. (citing Crawford, 541 U.S. at 51). Finally, the witness's casual elicitation of the co-defendant's remarks bore "no resemblance to the abusive governmental investigation tactics that the Sixth Amendment seeks to prevent." Id. Therefore, the Court found that "[t]he attributes of a testimonial statement [were] lacking." Id.

Initially, it is noted that since Tyron Rouse testified at trial, there is no claim that

14

petitioner did not have an opportunity to cross-examine him about his testimony. However, petitioner claims that the admission into evidence of Devin Rouse's statement to his cousin, Tyron, by way of Tyron's testimony, violated petitioner's right to confrontation. Since Devin Rouse's statement to his cousin did not bear "the characteristics exhibited by testimonial statements," the Confrontation Clause "ha[d] no role to play in determining the admissibility" of Devin Rouse's statement. See Berrios, 676 F.3d at 126-27. As with the declarants in Berrios and Shavers, there is no indication that Devin Rouse intended to incriminate [petitioner] or anticipated that [Tyron Rouse] would be called to testify" against petitioner or Devin Rouse. See Shavers, 693 F.3d at 396. Nor is there any suggestion that the conversation amounted to more than a "remark to an acquaintance," in this case a cousin, and there was certainly no "resemblance to the abusive governmental investigation tactics that the Sixth Amendment seeks to prevent." Id. at 396 (citing Berrios, 676 F.3d at 128).

Since "a witness's statement implicates the confrontation Clause only if it is testimonial," and Devin Rouse's statement to Tyron Rouse was not testimonial, the admission of Devin Rouse's statement, by way of Tyron Rouse's testimony, was not a violation of the Confrontation Clause. See Shavers, 693 F.3d at 395 (citing Berrios, 676 F.3d at 126); see also Davis, 547 U.S. at 823-24 (holding that the Confrontation Clause protects only against admission of testimonial hearsay); Crawford, 541 U.S. at 51 (observing that, at its core, the Confrontation Clause is concerned with "testimonial" hearsay). Since petitioner's Confrontation Clause claim was without merit, it cannot be said that trial counsel rendered ineffective assistance in failing to raise such a claim by objecting to the redacted statement of Devin Rouse. See Holland v. Horn, 150 F. Supp.2d 706, 787 (E.D. Pa. 2001) (counsel's assistance cannot be ineffective for failing to raise a

15

meritless claim); United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); Reinert v. Larkin, 211 F. Supp.2d 589, 595 (E.D. Pa. 2002) (habeas relief unavailable where counsel fails to raise a meritless claim); McAndrews v. Chesney, 1998 WL 136508, *5 (E.D. Pa. Mar. 23, 1998) (same); Cruz v. Gillis, 1995 WL 355222, *2 (E.D. Pa. June 9, 1995) ("[A]n attorney has no duty to present a meritless claim."); see also Strickland, 466 U.S. at 691 (failure of counsel to pursue fruitless claims "may not later be challenged as unreasonable"). Therefore, habeas relief is unavailable on this claim. See Berghuis, 130 S. Ct. at 2265 ("Courts can, however, deny writs of habeas corpus under § 2254 by engaging in de novo review . . . because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review"); Lewis v. Wilson, 748 F. Supp.2d 409 (E.D. Pa. June 22, 2010) ("Since petitioner's claim fails under de novo review, it certainly fails under the deferential review required by 28 U.S.C. § 2254(d)(1)."); see also Berghuis, 130 S. Ct. at 2265 (observing that de novo review is a "more favorable standard of review" for habeas petitioner than deference under AEDPA); Weeks v. Angelone, 528 U.S. 225, 237 (finding that since petitioner's claim was without merit on de novo review, "it follows *a fortiori* that the adjudication of the [State court] affirming petitioner's conviction and sentence neither was 'contrary to,' nor involved an 'unreasonable application of,' any of our decisions").

Under § 2253(c)(1), "an appeal may not be taken to the court of appeals" from the final order in a § 2254 proceeding "[u]nless a . . . judge issues a certificate of appealability ('COA')." 28 U.S.C. § 2253(c)(1)(A) (parenthetical added). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2); see Miller-

16

EL v. Cockrell, 123 S. Ct. 1029, 1039 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000). To establish this, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484; see Miller-EL, 123 S. Ct. at 1040. Here, for the aforementioned reasons, a reasonable jurist could not conclude that the Court's denial of this habeas petition is debatable or wrong. See Slack, 529 U.S. at 484. Since petitioner has not made the requisite showing of the denial of a constitutional right, a certificate of appealability should not issue. See Slack, 529 U.S. at 484.

My Recommendation follows.

# **R E C O M M E N D A T I O N**

AND NOW, this 19th day of November, 2012, upon consideration of the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 and the opposition thereto, for the reasons provided in the accompanying Report, it is RECOMMENDED that the habeas petition be DENIED and that a certificate of appealability should not issue.

       /s/ L. Felipe Restrepo
L. FELIPE RESTREPO
UNITED STATES MAGISTRATE JUDGE